11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Bruce
Douglas Wilson

Appellant

Vs.                   No.  11-03-00282-CR -- Appeal from Stephens County

State
of Texas

Appellee

 

The jury convicted appellant, Bruce Douglas
Wilson, of two counts of aggravated sexual assault of a child.  The jury assessed his punishment at
confinement in the Institutional Division of the Texas Department of Criminal
Justice for a term of 35 years on each count.[1]
The jury also imposed fines in the amount of $10,000 on each count.  Appellant attacks his conviction in a single
issue on appeal.  He contends that the
trial court erred in denying his motion to require the State to make an
election regarding the specific incidents of sexual assault for which it sought
to convict appellant.[2]  We affirm. 


            Appellant was charged in a two-count indictment with
committing acts of aggravated sexual assault against two sisters.  The indictment alleged as follows:

[Count
One]  Bruce Douglas Wilson, hereinafter
styled Defendant, on or about the 22nd day of September 2002, and before the
presentment of this indictment, in the County and State aforesaid, did then and
there, intentionally or knowingly cause the penetration of the mouth of [V.V.],
a child who was then and there younger than 14 years of age and not the spouse
of the Defendant, by Defendant=s
sexual organ;  

 

[Count
Two]  Bruce Douglas Wilson, in the County
of Stephens and State aforesaid, on or about the 22nd day of September 2002,
and before the presentment of this indictment, did then and there,
intentionally or knowingly cause the penetration of the female sexual organ of
[A.V.], a child who was then and there younger than 14 years of age and not the
spouse of the Defendant, by Defendant=s
finger.








The evidence presented at trial indicated that
appellant committed multiple acts of sexual assault upon the girls over the
course of several weeks.  Appellant
detailed these acts in a written statement which the State offered into
evidence.  His statement provided in
relevant part as follows:[3]








I
have known S.V. and her two daughters, A.V. and V.V. for approximately five
years.[4]  S.V. was a friend of my ex-wife, Orabel
Wilson.  S.V. used to take care of my
dogs when I was gone.  Between six and
eight weeks ago, S.V. invited me to spend the night at their house.  I was on the double bed in the living
room.  It was around midnight and
everybody had gone to bed except for A.V. and I.  A.V. and I were talking and she was telling
me she was going to be a professional massuse. 
I asked her if she would give me a massage for twenty dollars.   A.V. gave me the massage and I was massaging
her back.  We started kissing and it grew
into a making out situation.  At one
point she was one top of me, dry humping me. 
We then got partially undressed. 
Both of us had our clothes about half way off.  During this time, I touched her breast and I
believe I touched her vagina.  This would
have been both on the outside and inside of her vagina.  She was masturbating my penis and doing oral
sex on my penis.  She didn=t sleep with me, she went to bed.  Three or four weeks ago, I took S.V., A.V.,
V.V. and [S.V.=s
boyfriend] with me on my truck.  We went
east of here, finally ending up in Orlando, Florida.  The trip lasted approximately eleven
days.  We went to Universal Studios.  During the trip, me and A.V. did a little
kissing and a little massaging.  This
occurred four or five times.  It was
always in the truck.  I rubbed her vagina
a little bit.  This would be both on the
outside of her vagina and inside her vagina. 
That was all that happened during the trip to Florida.  Since we returned, we have been together
about three times.  These would have been
either at S.V.=s house
or in my truck while it was parked next to their house.  On one occasion, both A.V. and V.V. were in
bed with me.  This was in the house.  V.V. was wanting to play I Dare You.  For example, V.V. would dare A.V. to suck on
my penis.  A.V. would do it.  A.V. dared V.V. to do the same thing and V.V.
sucked on my penis.  I didn=t want to be dared too much, but I was
snuggling with them and kissing them.  It
started out we were all dressed and then everybody ended up undressed.  I kissed both of them on their breast and on
their vagina.  I was mostly kissing them
on their lips, they were French kissing me a lot.  I would say that I played I Dare You with
both of the girls probably three or four times. 
These games would take place either in the house or in the truck.  The last time I was with one of the girls was
about ten days ago.  I was with A.V.  It was in their house.  I was kissing her and massaging her.  As best as I can recall, she was masturbating
me.  I was massaging her all over.  We were French kissing.  This was around 2:00 a.m.  We were in the bed in the living room.  I was holding her and touching her all
over.  I might have touched her
breast.  I touched her on the outside and
inside of her vagina.  We never had sex.
[S.V.=s
boyfriend] walked in and said A.V. can=t
sleep with [me] or something to that effect. 
A.V. then went to bed in her room. 
That was the last time I saw her.[5]

 

The State also presented testimony from A.V. and
V.V. regarding appellant=s
conduct with them.  A.V. testified that
appellant penetrated her sexual organ with his finger and his penis during the
trip to Florida.  She also testified that
appellant made contact with her sexual organ with his mouth during the
trip.  These acts occurred on more than
one occasion during the trip to Florida. 
A.V. further testified that these acts occurred at her home in Stephens
County on several occasions. 

V.V. also testified that appellant  made contact with her sexual organ with his
mouth during the trip to Florida and that he penetrated her sexual organ with
his finger on the trip.  She stated that
this conduct occurred Aa
lot@ in Stephens County both before and
after the trip to Florida.  V.V. also
testified about an occasion when appellant put his penis in her mouth.  She testified that this act occurred in
Stephens County.

Appellant did not testify at trial.  He rested at the conclusion of the State=s case-in-chief without presenting a
defense.  Defense counsel made the
following statement during closing argument of the guilt/innocence phase of
trial: AMy
client...has never denied that this happened. 
He confessed to it, not just once, but he was let out of jailBhe was let out on bond, got out of
jail, and reconfessed to the crime again.@  

Appellant filed a written, pretrial motion asking
the court to require the State to make an election as to the acts upon which it
would rely in seeking to convict him. 
Appellant sought the following relief in the motion: 








[Appellant] requests that prior to trial the State
be required to elect which act of sexual conduct and the specific date of such,
if any, that the State will rely upon in proving the allegations in the
indictment. [Appellant] moves the Court, at the close of the evidence, to
require the State to elect the particular date and incident of conduct that it
relies upon in seeking the conviction of [appellant].

 

Appellant asserted in the motion that an election was necessary
in order to provide him with adequate notice of the charges against him and to
protect him from double jeopardy implications.[6]  The trial court considered the motion
immediately preceding jury selection.  In
denying the motion, the trial court stated that an election by the State was
unnecessary because of the instructions which would be included in the court=s charge with respect to the jury=s consideration of evidence pertaining
to extraneous offenses.[7]








We note at the outset of our analysis that the
issues pertaining to the requirement for the State  to make an election are currently under
review by the Texas Court of Criminal Appeals. 
The court has granted petitions for discretionary review in two recent
cases:  Farr v. State, 140 S.W.3d
895 (Tex.App. - Houston [14th Dist.] 2004, pet=n
granted), and Phillips v. State, 130 S.W.3d 343 (Tex.App. - Houston
[14th Dist.] 2004, pet=n
granted).  In Phillips, the
Fourteenth Court of Appeals determined that an error regarding the requirement for
the State to make an  election is
constitutional and, therefore, subject to harm analysis under the
constitutional error standard of review. 
TEX.R.APP.P. 44.2(a); Phillips v. State, supra at 350-52.  The court in Phillips expressly
disagreed with previous determinations by the 10th and 12th Courts of Appeals
that election error is non-constitutional in nature.  See Cates v. State, 72 S.W.3d 681,
696-97 (Tex.App. - Tyler 2001, no pet=n);
Wilson v. State, 3 S.W.3d 223, 226 (Tex.App. - Waco 1999, pet=n ref=d).  In Farr, the Fourteenth Court of
Appeals followed its previous holding in Phillips.  Farr v. State, supra at 900.  The distinction between constitutional versus
non-constitutional error is one of the two issues for which the Court of
Criminal Appeals has granted review in Phillips and Farr.  The court has also granted review upon the
State=s request
for it to reexamine its holding in O=Neal
v. State, 746 S.W.2d 769 (Tex.Cr.App.1988). 


At this time, the Court of Criminal Appeals= opinion in O=Neal constitutes the controlling
authority regarding the requirement for the State to make an election. The
court held in O=Neal
that the State must elect the specific act on which it will rely for conviction
when the indictment alleges one sexual assault but the evidence shows multiple
sexual assaults.  O=Neal v. State, supra at 771; Wilson
v. State, supra at 225.  Before the
State rests, the trial court has discretion in directing the State to make an
election.  O=Neal v. State, supra at 772; Phillips
v. State, supra at 349; Farr v. State, supra at 898.  Once the State rests its case-in-chief, upon
a timely request by the defendant, the trial court must order the State to make
an election and the failure to do so constitutes error.  O=Neal
v. State, supra at 772; Phillips v. State, supra at 349; Farr v.
State, supra at 898. 

The State argues that the trial court was not
required to grant appellant=s
request to require an election because appellant presented his request prior to
the close of the State=s
case-in-chief.  See O=Neal v. State, supra at 772.  We disagree with the State=s contention that appellant=s motion was premature.  As indicated above, appellant asked the trial
court to require the State to make an election Aat
the close of the evidence@
in his pretrial motion.  Thus, appellant
sought to compel an election by the State at a time when the State was required
to make an election under the holding in O=Neal.


Having determined that appellant=s request for an election was timely,
we must next consider whether the denial of the motion constituted error.  We conclude that error occurred with respect
to  count two of the indictment charging
appellant with digitally penetrating A.V.=s
sexual organ.  However, error did not
occur regarding count one of the indictment charging appellant with penetrating
V.V.=s mouth
with his sexual organ.








The evidence revealed that appellant committed
multiple acts of sexual assault upon A.V., including several instances of
digital penetration.  The evidence did
not focus upon a single episode of digital penetration.  O=Neal
v. State, supra  at 772-73.  Instead, the evidence was general in
nature.  The trial court=s denial of appellant=s request for an election constituted
error with respect to count two of the indictment because there was evidence
that appellant committed the act charged in this count on multiple occasions. 

The evidence regarding
appellant=s conduct
with V.V. also revealed that appellant committed multiple acts of sexual
assault upon V.V.  Unlike the evidence of
multiple instances of digital penetration with A.V., however, the evidence only
revealed one instance wherein V.V. performed oral sex upon appellant.  Specifically, the prosecutor asked V.V. the
following question:  AWas there an occasion Bwas there some time, [V.V.], that he
put his thing in your mouth?@
(Emphasis added)  V.V. answered A[y]es@
to this question.  Furthermore, appellant=s statement only described one occasion
wherein V.V. performed oral sex upon him.[8]  Absent evidence that V.V. performed oral sex
upon appellant on more than one occasion, the trial court did not err in denying
appellant=s request
for an election with respect to count one of the indictment.

Having determined that error occurred with respect
to count two charging appellant with digitally penetrating A.V., we must next
determine if the harm, if any, caused by the error constituted reversible
error.  As noted previously, there is a
split of authority among our sister courts regarding the harm analysis to be
used in evaluating election errors which the Court of Criminal Appeals will
likely resolve in the future.  In the
interim, we agree with the Fourteenth Court of Appeals=s
determination in Phillips that election error is one of constitutional
magnitude based upon the purposes of the election requirement.  Phillips v. State, supra at 352.  We are aided in this decision by the Court of
Criminal Appeals=s recent
opinion in Ngo v. State, No. PD-0504-04, 2005 WL 600353 (Tex.Cr.App.
March 16, 2005).   The court stated in Ngo
that jury unanimity is one of the purposes of requiring the State to make an
election. Ngo v. State, supra at *6. 
The court further noted that jury unanimity is required by the Texas
Constitution in felony cases.  Ngo v.
State, supra at *4; see Francis v. State, 36 S.W.3d 121, 126
(Tex.Cr.App.2000)(Womack, J., concurring)(citing TEX. CONST. art. V, ' 13).








Under the constitutional error standard of review
set out in Rule 44.2(a), we must reverse unless we find beyond a reasonable
doubt that the error did not contribute to appellant=s
conviction under count two.  See
Chapman v. California, 386 U.S. 18 (1967). 
In order to apply the standard set out in Rule 44.2(a), we must Acalculate, as nearly as possible, the
probable impact of the error on the jury in light of the other evidence.@ McCarthy v. State, 65 S.W.3d
47, 55 (Tex.Cr.App.2001), cert. den=d,
536 U.S. 972 (2002); Wesbrook v. State, 29 S.W.3d 103, 119 (Tex.Cr.App.2000),  cert. den=d,
532 U.S. 944 (2001).   If there is a
reasonable likelihood that the error materially affected the jury=s deliberations, then the error is not
harmless beyond a reasonable doubt.  Wesbrook
v. State, supra at 119 (citing Satterwhite v. Texas, 486 U.S.
249 (1988)).  While the most significant
concern must be the error and its effects, the presence of overwhelming
evidence supporting the finding in question can be a factor in the evaluation
of harmless error.  Wesbrook v. State,
supra at 119.  If an appellate court
rules that an error is harmless, it is in essence asserting that the nature of
the error is such that it could not have affected the jury.   Wesbrook v. State, supra at 119. 

Appellant confessed to committing the offense
charged in Count Two on multiple occasions in a written statement which was
admitted at trial without objection. 
Appellant provided explicit details about the assaults in his statement.
This evidence was obviously overwhelming. 
Furthermore, appellant made no effort at trial to recant his
confession.  In light of appellant=s confession that he committed the
charged offense on multiple occasions, we conclude that the election error
pertaining to Count Two was harmless. 
Moreover, it appears that the election error benefitted appellant by
protecting him against future prosecutions.[9]  Appellant=s
sole issue is overruled.  

The judgment of the trial court is affirmed.  

 

W. G. ARNOT, III

CHIEF JUSTICE

July 21, 2005

Publish.  See
TEX.R.APP.P. 47.2(b).

Panel
consists of:  Arnot, C.J., and

Wright,
J., and McCall, J.











     [1]The
trial court ordered that the two 35-year sentences are to run
cumulatively.  TEX. CODE CRIM. PRO. ANN.
art. 42.08 (Vernon Pamph. Supp. 2004 - 2005).





     [2]An
election is Asome action that excludes or limits the jury=s consideration of an offense.@  Ex parte
Goodbread, 967 S.W.2d 859, 861 n.2 (Tex.Cr.App.1998).





     [3]Although
appellant=s statement referred to the parties by their names, we
refer to the parties by initials so as to protect the identity of the children.





     [4]AS.V.@ is the mother of A.V. and V.V.  A.V. and V.V. were 12 and 11, respectively,
at the time of trial.





     [5]Appellant
submitted a supplement to his written statement which provided in relevant part
as follows:

 

[Appellant] is not guilty of aggravated sexual assault,
due to the entrapment caused by the mother=s neglect
in allowing the girls to watch XXX rated movies and leaving the girls alone
with him with the movies, and smoking marijuana (in violation of her
probation/testing dirty on a U A test). 
The second hand smoke from the marijuana must have caused the bad judgement
of [appellant] to get involved with minors, as he has never been involved with
minors before, (nor will he ever be again). 
He=s planning on getting married to Crystal Baxter, Age
25. [Appellant] does not smoke/use marijuana or any other drugs, nor cigarettes
or alcohol.  

 

The
supplemental written statement was also admitted into evidence.





     [6]Appellant=s contention that an election by the State would
protect him against potential double jeopardy implications  is incorrect. 
The State=s failure to make an election actually enhances an
accused=s double jeopardy protections.  If the State does not make an election, it is
barred from prosecuting in the future any offense within the scope of the
indictment and for which evidence was introduced at trial.  See Rodriguez v. State, 104 S.W.3d 87,
91 (Tex.Cr.App.2003); Ex parte Goodbread, supra at 860-61.

 





     [7]The
charge of the court given to the jury to determine guilt/innocence contained
the following instruction:

 

The defendant is on trial solely on the charge
contained in the indictment.  You are
instructed that if there is any testimony before you in this case regarding the
defendant having committed offenses other than the offense alleged against him in
the indictment in this case, you cannot consider said testimony for any purpose
unless you find and believe beyond a reasonable doubt that the defendant
committed such other offenses, if any were committed, and even then you may
only consider the same for the purpose of determining knowledge, identity or
intent, or absence of mistake or accident, if it does, and for no other
purpose.

 





     [8]Appellant
stated as follows in his statement: AOn one
occasion, both A.V. and V.V. were in
bed with me.  This was in the house.  V.V. was wanting to play I Dare You.  For example, V.V. would dare A.V. to suck on
my penis.  A.V. would do it.  A.V. dared V.V. to do the same thing and V.V.
sucked on my penis.@  (Emphasis
added)





     [9]See
Footnote No. 6 above.